**Application of Frederick N. ZIMMER-MANN (two cases).**
**Patent Appeal Nos. 9131, 9132.**

United States Court of Customs and Patent Appeals.

Jan. 17, 1974.

---

Callard Livingston, Evanston, Ill., attorney of record, for appellant; Francis D. Thomas, Jr., Arlington, Va., of counsel.

J. F. Nakamura, Washington, D. C., for the Commissioner of Patents; William H. Beha, Jr., Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

These consolidated appeals are from decisions of the Patent Office Board of Appeals affirming the examiner's rejections, made under 35 U.S.C. § 103, of claim 14 of appellant's application [1] entitled "Magnetically Coupled Pump" and claims 18, 19, and 21 of appellant's application [2] entitled "Pump Impeller and Coupling Magnet Structure." We affirm.

### Invention

Appellant's inventions in these appeals relate to novel forms of rotary impellers used in magnetically-coupled centrifugal pumps. The magnetically-coupled pumps use two permanent magnets to couple the pump impeller to the motor drive shaft. A first magnet is mounted on the impeller which is sealed inside the pump housing. The second magnet, located exterior to the housing and surrounding the first magnet, is mounted on the motor drive shaft to complete the magnetic-coupling and thereby drive the impeller. This construction avoids use of a drive shaft extending through the housing, with its attendant bearing and seals, as required where a direct drive is used.

Appellant's invention in Appeal No. 9131 is described in claim 14, reproduced below:

14. A fluid impeller adapted to be rotated about an operating axis by magnetic coupling with a driving magnet, and comprising a molded body of non-metallic plastic material having integrally conformed configurations disposed substantially symmetrically about an operating axis therethrough, said configurations including a hub portion disposed radially about said axis, and fluid-impelling configurations disposed about said axis in integral connection with said hub portion, and coupling magnet means arranged within said hub portion symmetrically about said axis and wholly enveloped by and contained within the molded plastic material defining said hub portion.

Appellant states that wholly enveloping the impeller magnet results in a pump suitable for handling active acids such as hot sulfuric acid which might otherwise be harmful to the magnet.

Claim 18, which is accepted as representative of the subject matter of appeal No. 9132, reads:

18. In a motor pump unit of the type including a motor having a shaft extending from one end thereof, a centrifugal pump comprising a housing and an impeller rotatably mounted in the pump housing, together with a magnetic coupling including and [sic] annular driving magnet connected to the motor shaft, the improvements

---

1. Serial No. 845,634 filed July 7, 1969.

2. Serial No. 854,019 filed August 18, 1969.

which comprise: the combination with an annular driving magnet connected to the motor shaft; an annular driven magnet connected to the impeller forming therewith a rotor; and a stovepipe hat-shaped nonmagnetic separator including a cylindrical tubular diaphragm separating the magnets and connected to and closing one side of the pump housing, said rotor being mounted on a shaft that is supported at at least one of its ends on a wall portion of said housing the rotor being freely mounted on the shaft for rotation relative thereto, said impeller including a plastics material hub having a tubular portion on which said driven magnet is mounted, and said unit including a molded plastics materials shell over the outer part of said driven magnet unitized with said hub.

Appellant relies on the last 5 lines of claim 18 to distinguish over the prior art and states that claims 19 and 21 stand or fall with claim 18. The purpose of the "molded plastics shell" in claim 18 is disclosed as preventing cracks and fissures from developing in the magnet as a result of exposure to very hot or corrosive liquids. The periphery of the tubular portion of the impeller has in the order of .025 inch clearance with the surrounding tubular diaphragm of the separator. Thus, a slight radial deformation of the magnet from cracking and fragmentation would result in its impinging the tubular diaphragm and impeding rotation of the impeller.

### Rejection

The rejection of claim 14 and claims 18, 19, and 21, the claims in both appeals, was for obviousness in view of Zimmermann[3] and Rossinger.[4] Appellant urges that a patent to Berner[5] which was considered alternative to Zimmermann with respect to claims 18, 19, and 21 is cumulative. We agree and will not discuss it further.

A patent to Farrelly et al.[6] was also referred to with respect to claims 18, 19, and 21, but we find it requires no discussion here.

Zimmermann discloses a magnetically-coupled pump which has an impeller that is similar to appellant's inventions with the primary difference being that the impeller includes an exposed magnet mounted on the impeller hub.

Rossinger discloses a motor operated, magnetically coupled stirrer. The stirring element consists of a permanent magnet that is placed in a liquid-filled vessel and caused to rotate in response to the rotation of an exterior motor driven magnet. When the device is to be used with a liquid of such a nature that it would react with the stirring element, the element is encased in a thin covering or shell of an inert material such as plastic.

The examiner considered that it would have been obvious "to wholly envelope the magnet means 31 of Zimmermann in the manner and for the same reason as taught in Rossinger to render claim 14 as unpatentable under 35 U.S.C. § 103." In affirming the examiner, the board agreed with his reasoning and further noted:

> Although the [claim calls] for a magnet "contained within the molded plastic material["] of said hub portion," [sic] * * *, we find * * * [this limitation] to be met by a combination of the references relied upon. It cannot be determined where a coating ends and an encasement begins, moreover, it appears that a coating does envelop or encase an object. We note that the material of the hub (72) of the Zimmermann patent is not stated; however, it appears obvious to us that the hub could be made of plastic. It is our opinion that if the magnet (31) of Zimmermann were coated with plastic as taught by Rosinger, then claim 14 fails to define a struc-

3. U.S. 3,205,827 issued September 14, 1965.

4. U.S. 2,350,534 issued June 6, 1944.

5. U.S. 2,970,548 issued February 7, 1961.

6. U.S. 2,555,686 issued June 5, 1951.

ture which is patentable over this combination of references.

With regard to appeal No. 9132, the board gave as its reasoning for affirming the rejection:

We agree with the examiner that the teaching supplied by the Rossinger patent would be sufficient to lead one of ordinary skill in the art to cover the driven magnet of either the Berner or Zimmermann patents with a thin-walled plastic shell. * * * It is our position that the specific magnet mounting and covering structure claimed is obvious in view of the cited prior art. With regard to the results achieved by the claimed structure, we agree with the examiner that such results are inherent in the obvious structure taught by the references.

## OPINION

We find no error in the decisions by the board that appellant's claimed inventions would have been obvious in view of Zimmermann and Rossinger. We have considered all the specific limitations of claims 14 and 18 argued by appellant, as the board must have done in making its decisions.

Appellant contends that the board did not take into account all the limitations in claim 14 such as the recitation beginning with "a molded body of non-metallic plastic material." We think that the above excerpt from the board's decision in appeal 9131 stating that this would have been obvious, with which we agree, lays to rest this argument.

If it was desired to use a magnetically-coupled pump impeller in a corrosive environment it would certainly have been obvious in view of Rossinger that an exposed potentially reactive element such as the magnet would need be inert or protected by an inert covering such as plastic. Protecting the magnet would logically require that it be "wholly enveloped" by the plastic covering. Thus, we think, as did the board, that a magnet coated with plastic and mounted on a hub made of the same material would

have been obvious. Appellant argues that claim 14 is directed to a device wherein the magnet is embedded in the hub-portion of a monolithically molded plastic hub-impeller structure. He would have us accept this as being significantly different and unobvious from a structure wherein the magnet is merely coated as suggested by Rossinger. However, on this point we agree with the following observations made by the solicitor:

It would appear to be only a matter of design expediency whether the magnet means is wholly enveloped by a plastic coating or shell and the hub shaft, or by the material of the impeller [3] hub

[3]. In its decision, (1R–35) the Board stated "that the material of the hub (72) of the Zimmermann patent is not stated; however, it appears obvious to us that the hub could be made of plastic." Appellant has not refuted this statement.

itself. Both function in substantially the same manner with substantially the same means. Moreover, appellant has not argued that the monolithic expedient produces any new or unobvious result not produced by the coating expedient.

For the same reasons stated above we agree with the board's decision in appeal No. 9132 that the specific mounting structure of claim 18 would have been obvious. The plastic coating on the magnet that is mounted on the plastic hub is "unitized," whether it be joined to the hub through a force fit or a cemented connection as appellant discloses.

Appellant's argument that a protective covering for Zimmermann's magnet, such as might be suggested by Rossinger, would not inherently prevent fragmentation of the magnet is not persuasive. Rossinger discloses that the thickness of its "thin" protective covering is sufficient to "prevent an interaction" between the material of the magnet and liquid being stirred. Appellant discloses only that the shell of the impeller magnet is of "thin minimal thickness." A quantitative difference is not apparent,

and fragmentation appears to be primarily a consequence of corrosion.

An affidavit, initially presented under Rule 131 to overcome an earlier filed reference, states that impeller magnets coated with "008 [inch] thickness of epoxy" were ordered made on January 1, 1964 and sold sometime thereafter. Appellant argues that this epoxy coated impeller magnet is equivalent to the modification of Zimmermann that the board considered Rossinger to suggest and that neither the "claimed concepts, structure or results" were produced. We find no basis in the affidavit to support this argument of appellant.

For the foregoing reasons, the rejections of claims 14 and claims 18, 19 and 21 are affirmed.

Affirmed.